**Affirmed; Opinion Filed June 27, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00465-CV

### TEALWOOD REAL ESTATE HOLDINGS PO, LLC, Appellant
### V.
### RAMONA D. JOSEPHS, MARIO F. LARSEN, AND
### DNI PROPERTIES, LLC, Appellees

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-10423**

## MEMORANDUM OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Partida-Kipness

In this appeal, appellant Tealwood Real Estate Holdings PO, LLC challenges the trial

court's take-nothing summary judgment in the lawsuit it filed against appellees Ramona D.

Josephs, Mario F. Larsen, and DNI Properties, LLC[1].  Tealwood presents three issues generally

asserting the summary judgment was improper because (1) the evidence raised genuine issues of

material fact regarding Tealwood's justifiable reliance on appellees' alleged representations, (2)

its damages for negligent misrepresentation included out-of-pocket losses, and (3) Tealwood

presented sufficient evidence of damages to support its claims.  For the reasons that follow, we

conclude the trial court did not err because the summary judgment evidence conclusively negated

---

[1] Josephs is also a director and managing member of DNI Properties.

the justifiable reliance element necessary for all of Tealwood's claims. Accordingly, we affirm the trial court's judgment. We issue this memorandum opinion because the issues are well-settled in law. *See* TEX. R. APP. P. 47.4.

## BACKGROUND

This dispute arises out of Tealwood's purchase of twelve condominium units from appellees in 2017.[2] The following facts were undisputed in the trial court. The parties entered into the sales contracts on or about January 26, 2017. Each contract contained an addendum that, among other things, included the following representations and promises:

> 3. Representations, Warranties and Covenants of Seller. For the purpose of inducing Buyer to enter into this Contract and to consummate the sale and purchase of the Property in accordance herewith, Seller makes the following representations, warranties and covenants to Purchaser:
>
> . . .
>
> (b) Seller has not received any written notice from a governmental authority that the Property fails to comply with any laws, regulations, ordinances, orders or other requirements of any governmental authority having jurisdiction over or affecting the Property or any part thereof nor, to Seller's knowledge, is the Property or any part thereof not in compliance therewith;
>
> . . .
>
> (j) Seller has not received any notice of any violation of, and to the best of Seller's knowledge it has complied with, any and all condominium declarations, ordinances; regulations, laws and statutes pertaining to the Property or any portion thereof, or the location, construction, occupancy, operation and use thereof;
>
> . . .
>
> The continued validity in all respects of the aforesaid representations and warranties and the continued performance of the covenants set forth in Paragraph 4 below shall be a condition precedent to Buyer's obligations to close the transaction contemplated hereby. All representations and warranties contained in this Paragraph 3 or elsewhere in this Contract shall be deemed remade as of the date of Closing and shall survive Closing for a period of one (1) year. If any of said representations and warranties shall not be correct at the time the same is made or as of the Closing or if any of said covenants shall not be performed during the term

---

[2] Tealwood executed two separate residential condominium sales contracts for the units – one with Josephs and Larsen for one unit and the other with DNI Properties for eleven units.

of this Contract, such event shall be a default by Seller under this Contract and upon written notice from Buyer to Seller on or prior to Closing, this Contract shall become null and void, in which event, the Earnest Money Deposit shall be immediately returned to Buyer and neither party hereto shall have any further liability or obligation hereunder.

More than two weeks before closing, on February 23, Tealwood received resale certificates from the condominium association revealing, among other things, that the association's board "has received notice from a governmental authority concerning violations of health or building codes with respect to the Unit, the limited common elements assigned to the Unit, or any other portion of the condominium project. Notices received are: City code inspector & attorney have agreed to a two-year plan for rotten wood replacement." The resale certificates also indicated that the letter from the city could be viewed at the association's office with proper notice and that the actual agreement with the inspector, attorney, and association was verbal.

As Tealwood concedes in its appellate brief, the information in the resale certificates "called into question the veracity of [appellees'] earlier representations concerning the condition of the Property . . . ." According to the summary judgment declaration of Anson Reilly, Tealwood's manager, Reilly requested a copy of the city notice from the association[3], but it refused to give it to him asserting the notice was addressed to the individual unit owners rather than the association or board.[4] Reilly also stated he sought a copy of the city notice from Josephs.[5]

On the morning of the March 10 closing, Reilly complained by email to Josephs and the real estate broker for DNI Properties that he had not yet received a copy of the city notice referred to in the resale certificates. The real estate broker responded by email that (1) Josephs did not have the notices and likely never received them, and (2) the rotted wood deficiencies cited at the time

---

[3] Reilly did not specify how or to whom his request to the association was given.

[4] Reilly also knew that appellees Larsen and Rueben Josephs, the other director and manager of DNI Properties, were on the association's board at the time.

[5] Josephs was also the on-site property manager of the complex.

of the inspection were very minor, had been fixed, and would be good for the next inspection. About seventeen minutes before the 1:30 p.m. closing time, Reilly emailed the closing agent that Tealwood was still waiting for sellers to deliver the notice referenced in the resale certificates and that the closing should not proceed until Tealwood received the requested item. Nevertheless, Reilly later emailed the closing agent stating in relevant part:

> In regards to the notice regarding a governmental authority notice below obtained by the Managing Agent, despite the Managing Agent evidently refusing to provide this information to the Seller per your explanation which we do not agree with nor understand, we are providing you authorization to move forward with closing and recording once all closing conditions have been satisfied.

In his summary judgment declaration, Reilly asserted that when he appeared at the title company's office for the closing on March 10, Larsen and Josephs downplayed the city notice and code violations indicating the notice was "merely a routine annual letter" and that all issues had already been addressed. Reilly contends he relied on those representations when he went forward with the closing that day.

Three days after the closing, Reilly emailed Vic Bosnich at Veracity, Inc., the association's management company, requesting documentation, noting that he understood from discussions with appellees and the title closing representative that Veracity had refused to provide the requested documentation. The next day, Bosnich emailed Reilly his copy of the city attorney's February 3, 2017 letter to Josephs as site manager of the condominiums detailing numerous city code violations, including failing to maintain multiple items in operating condition. Bosnich indicated he had received the letter at a meeting with Josephs and city officials, the handwritten notes on the letter were his own, and he did not have a clean copy of the letter.

In August 2017, Tealwood sued appellees asserting claims for statutory and common law fraud as well as negligent misrepresentation based on appellees' alleged representations and omissions with respect to the city's violations notice. Appellees moved for summary judgment on

all of Tealwood's claims asserting, among other grounds, that the summary judgment evidence established conclusively Tealwood's reliance on appellees' alleged representations or omissions with respect to the city's violations notice was not justifiable.[6] Tealwood responded to the motions arguing appellees did not address representations made up to and immediately before closing and did not conclusively establish Tealwood had actual knowledge that the representations were untrue. After a hearing, the trial court granted summary judgment in favor of appellees on all of Tealwood's claims against them.[7] Tealwood timely filed this appeal.

## ANALYSIS

In its first issue, Tealwood argues the trial court erred in granting summary judgment because there was a genuine issue of material fact as to whether Tealwood justifiably relied on appellees' representations involving the city's violations notice. Specifically, Tealwood argues appellees did not negate the justifiable reliance element as a matter of law because there was a fact issue regarding whether "Tealwood had actual knowledge of the information [appellees] misrepresented or concealed from [it]."

We employ a de novo standard of review regarding a trial court's summary judgment ruling. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). For a traditional motion for summary judgment, we review all of the summary judgment evidence in the light most favorable to the nonmovant to determine whether the party moving for summary judgment has established no issue of material fact exists and the movant it entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). A defendant is entitled to summary judgment on a plaintiff's

---

[6] Appellees filed two, almost identical, hybrid traditional and no-evidence motions for summary judgment. One was on behalf of appellees Josephs and Larsen. The other was filed on behalf of DNI Properties.

[7] Tealwood also filed a summary judgment motion on Josephs and Larsen's counterclaim against them. The trial court granted this motion as well. Appellees have not appealed that ruling.

claim if it conclusively negates at least one element of the cause of action. *See Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

Tealwood pleaded causes of action against appellees for statutory fraud, common law fraud, and negligent misrepresentation. Common to all three causes of action is the requirement that Tealwood must have justifiably relied on the alleged misrepresentations on which its causes of action are based. *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653–54 (Tex. 2018) (both fraud and negligent misrepresentation require plaintiff's reliance on alleged representation to be justifiable); *Rich v. Olah*, 274 S.W.3d 878, 887 (Tex. App.—Dallas 2008, no pet.) (justifiable reliance is essential element of common law fraud, statutory fraud, and negligent misrepresentation).

Here, in addition to the representations in the addendum to the contracts set forth above, Tealwood's claims were based on the representations in the real estate broker's March 10 email and statements by Josephs and Larsen immediately prior to closing downplaying the significance of the city's notice and representing that the city notice was merely a routine annual letter and all of the issues identified had already been addressed. Tealwood argues that because it did not have actual knowledge of the falsity of appellees' alleged representations, appellees did not negate justifiable reliance as a matter of law. We do not agree.

Although justifiable reliance normally presents a question of fact, this element can be negated as a matter of law when circumstances exist which make reliance unjustifiable. *Orca Assets*, 546 S.W.3d at 654. In determining whether appellees negated justifiable reliance as a matter of law, we consider the contract and the nature of the parties' relationship. *Id.* When a party in an arm's-length transaction fails to exercise reasonable diligence to protect its own interests, it cannot merely rely on the honesty and integrity of the other party and instead is "'charged with knowledge of all facts that would have been discovered by a reasonably prudent

person similarly situated.'" *Id*. (quoting *AKB Hendrick, L.P. v. Musgrave Enters., Inc.*, 380 S.W.3d 221, 232 (Tex. App.—Dallas 2012, no pet.)). Stated another way, a plaintiff may not blindly rely on a defendant's representation where the plaintiff's knowledge, experience, and background warrant investigation into the defendant's representations before the plaintiff acts in reliance upon those representations. *Id*.

In the arm's-length transaction at issue here, Tealwood was very familiar with the condominium complex having already owned about 90 units before its twelve-unit purchase on March 10. Moreover, less than a year before the sales contracts were signed in this case, Tealwood's manager Reilly attended the condominium association's annual owner's meeting where he was appointed secretary of the association's board. According to the meeting minutes, he asserted the negligent conditions of the property were a result of the property site manager (identified as Josephs in the minutes) and proposed a $410,000 improvement increase. After his proposed increase failed, he stepped down as secretary.

After receiving the resale certificates for the twelve units under contract, it is beyond dispute that Tealwood had actual knowledge that the representations in the addendum were incorrect and that the board had received notice from a governmental authority concerning violations of health or building code. It was also aware that the city code inspector and attorney had agreed to a two-year plan for rotten wood replacement. Although Reilly attempted to obtain a copy of the notice from the association and Josephs, neither provided a copy. Reilly also knew that Rueben Josephs and Larsen were on the association's board at that time.

On the day of the closing, shortly before the scheduled closing time, Reilly advised the closing agent to not close the transaction until he confirmed the requested notice was delivered to him. Later that same day, however, Reilly sent another email authorizing the closing without obtaining the notice, stating that he did not agree with or understand why the managing agent

would not provide the notice. Rather than obtaining the actual city notice, however, Tealwood simply relied on the sellers to inform it of what the notice said and whether all issues had been addressed. Tealwood closed the transaction after receiving the broker's email and hearing representations at the closing from sellers Josephs and Larsen that downplayed the significance of the city's notice as an "annual letter" and indicated all issues in the letter had already been addressed.

The Texas Supreme Court adopted the "red flags" impediment to justifiable reliance in *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913 (Tex. 2010). Simply stated, a party may not justifiably rely on a misrepresentation if there are "red flags" indicating such reliance is unwarranted. *Id*. at 923. Here, Tealwood knew the representations in the addendum that appellees had no notice of building or health code violations was incorrect after they received the resale certificates. It also was aware that the association and city had orally agreed to a two-year plan for rotten wood replacement. Tealwood's attempts to obtain the city notice from Josephs, the association, and the managing agent were all unsuccessful. In fact, Josephs denied having the notice and indicated that she likely never received it. Nevertheless, Tealwood blindly accepted her characterization of the notice as an annual letter as well as her representations as to its contents. Additionally, Tealwood accepted her representations that all issues (in the notice she denied receiving) had already been addressed at the time of closing despite information on the resale certificates that the city and the association had orally agreed to a two-year plan for rotten wood replacement.

Viewing the circumstances in their entirety, including Tealwood's extensive knowledge of the condominium complex involved, its ownership of about ninety units prior to the March 10 closing, Reilly's participation in the association's annual meeting less than a year before the two sales contracts were executed, as well as Tealwood's difficulty in obtaining the city's notice from

appellees, the association, and its management company, Tealwood's decision to proceed with the closing without seeing the notice to determine for itself whether all matters identified in the notice had in fact been addressed is not justifiable.

Throughout the course of this transaction, Tealwood was presented with red flags that should have alerted it to the danger of blindly relying on appellees' representation with respect to what violations the city's notice contained and whether they had been resolved at the time of the closing. Considering these red flags along with Tealwood's sophistication involving the ownership and purchase of units in this particular condominium complex, Tealwood cannot maintain its claims of justifiable reliance. Indeed, rather than delaying the closing so it could view the notice itself to determine what code violations the city reported and whether they had been remedied, Tealwood was satisfied with appellees' vague assurances that the violations were minimal and already fixed. But like the plaintiff in *Orca Assets*, Tealwood needed to protect its own interests through the exercise of ordinary care and reasonable diligence rather than blindly relying on appellees' vague assurances. *See Orca Assets*, 546 S.W.3d at 660. Tealwood's failure to do so precludes its assertion of justifiable reliance as a matter of law. *Id*.

In reaching our conclusion, we necessarily reject Tealwood's contention that to negate conclusively the element of justifiable reliance, appellees were required to establish Tealwood had actual knowledge that appellees' representations were not true or actual knowledge of the litany of code violations set forth in the notice. *Grant Thornton* and its progeny have no such requirement. *See Grant Thornton*, 314 S.W.3d at 923.

## CONCLUSION

Based on the record before us, the trial court did not err in granting a take-nothing summary judgment on all of Tealwood's claims because appellees conclusively negated the element of justifiable reliance required for each of Tealwood's causes of action. Our resolution of Tealwood's

first issue make it unnecessary to address its remaining two issues.  We affirm the trial court's judgment.


/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

180465F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

TEALWOOD REAL ESTATE
HOLDINGS PO, LLC, Appellant

No. 05-18-00465-CV     V.

RAMONA D. JOSEPHS, MARIO F.
LARSEN, AND DNI PROPERTIES, LLC,
Appellees

On Appeal from the 162nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-17-10423.
Opinion delivered by Justice Partida-
Kipness, Justices Whitehill and Pedersen,
III participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Ramona D. Josephs, Mario F. Larsen, and DNI Properties, LLC recover their costs of this appeal from appellant Tealwood Real Estate Holdings PO, LLC.

Judgment entered this 27th day of June, 2019.